# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED
SCRANTON**

AUG 0 1 2013

PER _____

DEPUTY CLERK

TARA REILLY n/k/a TARA ADAMS,      :
on behalf of herself and all others      :
similarly situated,      :
     :
         Plaintiff      :     3:12-CV-02312
     :
    v.      :
     :     (JUDGE NEALON)
NORTHEAST REVENUE      :
SERVICES, LLC,      :
     :
         Defendant      :

## MEMORANDUM

Plaintiff, Tara Reilly, commenced this action by filing a class action complaint on

November 19, 2012. (Doc. 1). The complaint alleges that Plaintiff and others similarly situated

were harmed by Defendant, Northeast Revenue Services, LLC, sending false, deceptive,

misleading and unfair notices which failed to advise the addressee that Defendant was a debt

collector attempting to collect alleged delinquent waste disposal fees. (Doc. 1, p. 3). The

complaint also alleges that Defendant violated the federal Fair Debt Collection Practices Act, 15

U.S.C. § 1692 et seq. ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act, 73

P.S. § 2270.1 et seq. ("FCEUA"), and the Pennsylvania Unfair Trade Practices and Consumer

Protection Law, 73 P.S. § 201-1 et seq. ("UTPCPL"), and that Defendant has been unjustly

enriched and should be enjoined from violating said federal and state laws. (Doc. 1).

On January 25, 2013, Defendant filed a motion to dismiss. (Doc. 6). A brief in support

was filed on February 8, 2013; a brief in opposition was filed on February 22, 2013; and, a reply

brief was filed on March 8, 2013. (Docs. 7-9). The motion to dismiss is now ripe for disposition and, for the reasons that follow, will be granted in part.[1]

## I.    Alleged Facts

In the complaint, Plaintiff alleges that Defendant, acting as a debt collector, employed misleading, unfair and deceptive collection tactics in violation of the FDCPA, the FCEUA, and the UTPCPL. (Doc. 1, ¶ 1). The Defendant is a Wilkes Barre, Pennsylvania based limited liability company which provides collection services for municipal and private entities. (Doc. 1, ¶ 5). Defendant was retained by the City of Scranton to collect delinquent waste disposal fees and sent a notice to Plaintiff on or about November 9, 2012, attempting to collect alleged delinquent waste disposal fees from 2005 to 2009 in the sum of $1,380.74. (Doc. 1, ¶¶ 6-7) & (Doc. 1-2). However, Plaintiff had satisfied all outstanding waste disposal fees and did not owe any amount to the City of Scranton for delinquent waste disposal fees. (Doc. 1, ¶¶ 13-14).

Plaintiff maintains that there is a similarly situated class of owners of real property located in Scranton, Pennsylvania that "received communications from the Defendant after

---

[1] Plaintiff has not objected to this Court addressing this motion to dismiss prior to considering class certification, and, based on the alleged facts, it is appropriate, fair, and judicially efficient to address the material issue raised by the motion to dismiss (whether the refuse fee is a debt under the FDCPA) prior to addressing class certification. See e.g. Hudson v. Eaglemark Savings Bank, 2011 U.S. Dist. LEXIS 49505 (E.D. Pa. May 9, 2011) (granting motion to dismiss prior to class certification), affirmed by 2012 U.S. App. LEXIS 6431 (3d Cir. 2012); see also McReynolds v. Merrill Lynch & Co., 694 F.3d 873, 879, n.4, (7th Cir. 2012) ("[I]t is sometimes appropriate to decide a Rule 12(b)(6) motion ahead of class certification."), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (affirming dismissal of antitrust claims prior to ruling on class certification); Greenberger v. GEICO Gen. Ins. Co., 631 F.3d 392, 394-96 (7th Cir. 2011) (same); Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 797 (7th Cir. 2010) (same).

November 1, 2012 relating to municipal claims for delinquent waste disposal fees." (Doc. 1, ¶ 23). Plaintiff alleges that Defendant sent out more than 7800 standard form notices virtually identical to those sent to Plaintiff to consumers who own property within the City of Scranton. (Doc. 1, ¶ 28). Plaintiff contends that Defendant's collection notices violate the FDCPA and the FCEUA because they do not contain the validation notice or verification language, include amounts that are not due and owing, and do not advise that the debtor has thirty (30) days to dispute the debt. (Doc. 1, ¶¶ 1, 9-12, 15 & 37). Plaintiff seeks certification of a class of Pennsylvania consumers and actual, statutory and treble damages on behalf of the class. (Doc. 1, ¶ 1 & § VI. Prayer For Relief).

Plaintiff alleges the FDCPA applies to the notices in question as Defendant was acting as a debt collector as defined under the FDCPA and that the refuse fees are considered a debt within the meaning of the FDCPA. (Doc. 1, ¶¶ 17-18), citing Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227 (3d Cir. 2005) and Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000).

## II.     Standard of Review

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). First, the court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58, 127 S. Ct. 1955, 167 L. Ed. 929 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id.; Fed.R.Civ.P. 8(a)(2).

## III. Discussion

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because fees owed for refuse services are not a "debt" under the FDCPA and, accordingly, Plaintiff's claims under the FDCPA fail as a matter of law. (Doc. 7, p. 5). Defendant argues that Plaintiff's claims under the FCEUA and UTPCPL fail as a matter of law because she cannot establish a violation of the FDCPA. (Doc. 7, p. 10). Lastly, Defendant argues that Plaintiff's claim for unjust enrichment fails because it is not alleged that Defendant received anything that it was not entitled to and that Plaintiff's injunctive relief claim also fails as a matter of law because it is premised on the alleged statutory violations. (Doc. 7, pp. 11-13). The crux of Defendant's motion is that Plaintiff has not alleged a violation of the FDCPA and, therefore, all of her claims fail. (Docs. 6 & 7).

4

Having found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," Congress enacted the Fair Debt Collection Practices Act in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The FDCPA applies to "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" Pollice, 225 F.3d at 399, citing Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987) and see 15 U.S.C. §§ 1692e-f. "Congress incorporated broad definitions of both 'debt' and 'debt collector' into the FDCPA in order to achieve its remedial purpose." FTC v. Check Investors, Inc., 502 F.3d 159, 167-68 (3d Cir. 2007) (citing 15 U.S.C. §§ 1692a(5), 1692a(6)), cert. denied, 2008 U.S. LEXIS 8237 (U.S. 2008). A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

In analyzing the definition of "debt," the United States Third Circuit Court of Appeals focused on the word "transaction" and noted that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value" and that "[t]he relationship between taxpayer and taxing authority does not encompass

that type of pro tanto exchange which the statutory definition envisages." Staub v. Harris, 626 F.2d 275, 278 (holding that per capita taxes were not a "debt" and the collection of them was not subject to the FDCPA). The Court rejected an opinion letter from the Federal Trade Commission and analyzed the legislative history of the FDCPA noting it is "bereft of any explicit reference to taxes" and that "[t]he Act was intended to apply 'only to debts contracted by consumers for personal, family or household purposes.'" Id., citing Sen.Rep. No. 95-382 at 3, reprinted in (1977) U.S. Code Cong. & Admin. News at 1697.

The United States Court of Appeals for the Third Circuit has determined that a "homeowner's water and sewer obligations meet the definition of 'debt'" under the FDCPA. Piper, 396 F.3d 227; Pollice, 225 F.3d at 400. In Pollice, the Third Circuit Court of Appeals again focused on the term "transaction" and held that "requesting water and sewer service" was a transaction because "[a]t the time these obligations first arose, homeowners ('consumers' of water and sewer services) had an 'obligation . . . to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services. . . primarily for personal, family, or household purposes.'" Pollice, 225 F.3d at 400. In Piper, the defendant attempted to distinguish the debt in question by arguing that unlike the homeowners in Pollice, Piper did not have to file an application for water/sewer services. Piper, 396 F.3d at 233, n.8. The Third Circuit Court of Appeals followed the Pollice decision, and noted that the Piper's account with the city was metered and that the amount of their obligation to pay was based on the amount of water they chose to use. Id.

Plaintiff, in the complaint, alleges that "[w]aste disposal fees are considered a debt within the meaning of the FDCPA." (Doc. 1, ¶ 18), citing Piper, 396 F.3d 227; Pollice, 225 F.3d 379.

6

Plaintiff argues that the waste disposal fee is not a tax but is both voluntary and consensual as a city resident can opt out of the fee, and further argues that the fees are in exchange pro tanto for the benefit of the removal of waste and accordingly subject to the FDCPA. (Doc. 8, pp. 9-10). Plaintiff concludes that because the waste disposal fee, specifically called a fee and not a tax by city ordinances, arises directly from and covers the cost of the service of waste removal, a transaction for personal, family or household purposes, it is a debt under the FDCPA. (Doc. 8, pp. 10-11).

Defendant argues that the waste disposal fees incurred were not the voluntary, pro tanto exchange contemplated by the FDCPA and were not "'metered in the normal fashion'" like water and sewer and the amount of the obligation to pay was not "'based on the amount of water they chose to use.'" (Doc. 7, p. 7), citing Piper, 396 F.3d at 233, n.8. Defendant points out that under the City of Scranton Ordinance, residents were automatically obligated to pay the fixed refuse fee as a condition to owning property no matter how much refuse was disposed, and argues such a non-consensual, fixed fee is not a transaction. (Doc. 7, pp. 7-8) & (Doc. 9, pp. 1-2) ("[T]he refuse is a mandatory municipal obligation upon all residents."). Defendant contends that the fixed refuse fee is more akin to a property tax which does not arise "'from the purchase of the property but from the fact of ownership.'" (Doc. 7, p. 8), citing Pollice, 225 F.3d at 402.

Defendant argues that for the FDCPA to apply the debt must arise from a transaction which is a consensual business deal between the parties for consumer related goods. (Doc. 9, pp. 2-3). Defendant cites to Boyd v. J.E. Robert Co., Civ. No. 05-2455, 2012 U.S. Dist. LEXIS 142688, *33-49 (E.D.N.Y. Oct. 2, 2012), which held that New York City water and sewage supplied by the City pursuant to Administrative Code "were non-negotiable charges mandatorily

levied upon citizens for public utilities provided by the City to the general public," and because the plaintiffs did not negotiate or enter into a contract or agreement there was no consensual negotiated transaction. (Doc. 9, pp. 4-5). Defendant argues that like in Boyd, the refuse fee in question was from a city law mandating a service provided by the City of Scranton to the general public and the fees are not the result of a consensual transaction. (Doc. 9, p. 5). Defendant distinguishes the case sub judice and Boyd from Pollice and Piper as the obligations in the former were mandated and the latter were the result of the plaintiffs requesting and voluntarily accepting the service. (Doc. 9, pp. 5-6). Defendant further argues that the New York City Code, like the City of Scranton Refuse Ordinance, and unlike the Pittsburgh municipal water authority in Pollice, leaves no room for a voluntary or consensual transaction between parties. (Doc. 9, pp. 7-8), citing (Doc. 7-1, p. 5) (The City of Scranton Ordinance states "All City residential refuse accumulated in the City shall be collected, conveyed and disposed of by the City."). Lastly, Defendant highlights that the refuse fee is fixed and not a pro tanto exchange like the water at issue in Piper which was metered so that the bill was based on the amount of water the consumer chose to use. (Doc. 9, pp. 10-11). Defendant points out that the City of Scranton considered and rejected a per bag refuse fee system and argues that because the fee is fixed this matter is clearly distinguishable from Piper because there was not a pro tanto exchange. (Doc. 9, pp. 11-12).

Because the City of Scranton was no longer able to pay its waste disposal and collection costs with the revenue raised from city taxes, the 1994 City of Scranton Ordinance was enacted to establish a fee "TO COVER THE WASTE DISPOSAL AND COLLECTION COSTS INCURRED BY THE CITY OF SCRANTON FOR THE DISPOSAL OF REFUSE." (Doc. 7-1, p. 4). Under the ordinance, "All City residential refuse accumulated in the City shall be

collected, conveyed and disposed of by the City" under the supervision of the Director of the Department of Public Works. (Doc. 7-1, p. 5). Further, it "shall be unlawful for any person, other than such persons as are duly authorized by the City to collect and haul refuse within or from the City so as to avoid payment of the refuse collection charge." (Doc. 7-1, p. 6). The flat fee is the responsibility of the property owner and originally in 1994 was $100 per year.[2] (Doc. 7-1, p. 6). The fee does not fluctuate depending upon the amount of waste disposed. (Doc. 7-1, p. 6); see also (Doc. 7-1, pp. 12, 15, 17, 20, 23, 26, 29, 32, 35, 38, & 41) (The amended ordinance calls for nullification of the semi-annual payment plan option in the event the City adopts a "Per Bag Fee"). Refuse collection service may be discontinued to delinquent accounts. (Doc. 7-1, p. 6). A property owner can become "exonerated" from the refuse fee by filing an affidavit with the city certifying that the property has been unoccupied and generating no refuse for three consecutive months and a property owner must file requests and receive exonerations during each three (3) consecutive months in order to pay no fee in any given year. (Doc. 7-1, p. 7).[3]

The City of Scranton refuse fee, for purposes of analysis of the definition of a "debt" under the FDCPA, is more akin to a tax than a bargained for good. The fee stems from the "fact of ownership" and does not arise from the purchase of the property. See Albanese v. Portnoff

---

[2]In 1999, the fee was increased to $110.00 per year; in 2000, the fee was increased to $178.00 per year. (Doc. 7-1, pp. 11, 14, 17, 20, 23, 26, 29, 32, 35, 38, & 41).

[3]This "Exonerations" provision is relied upon by Plaintiff for her contention that this "ability to opt out of the waste disposal fee supports the voluntary/consensual nature of the fee." (Doc. 8, p. 9, n. 3). Because the exoneration is dependent upon the house being unoccupied, it can hardly be considered voluntary. Homeowners, who occupy or rent their homes, are unable to opt out of the refuse fee or service. (Doc. 7-1, p. 7).

Law Associates, 301 F.Supp.2d 389, 402 (E.D. Pa. 2004) (ordering further discovery because "conflicting inferences can be drawn on the issue of whether the trash fee in this case contemplates a transaction or arises from the fact of ownership"), citing Pollice, 225 F.3d at 402. Here, the delinquent refuse fees are linked to the property. See (Doc. 1, ¶ 14) ("Plaintiff had satisfied all outstanding waste disposal fees due on her property.") (emphasis added); see also (Doc. 2-1, p. 2) (Notice of Delinquent Waste Disposal Fees not against a certain account or person but against a certain property listed by Map Number and Address). The class is defined as owners of real property in the City of Scranton. (Doc. 1, ¶ 22) (defining the class as "owners of real property located in Scranton" having received communications "relating to municipal claims for delinquent waste disposal fees"); (Doc. 1, ¶ 28) (defining the class as those "who own property within the City of Scranton"). The fee is mandated by a City of Scranton ordinance upon all property within the City and is an incident of, or simply stems from, property ownership.

The refuse fee is not akin to a business deal or pro tanto exchange. Property owners do not request refuse service and it is in no way consensual. If an owner wants to reside on the premises, it is mandatory, not optional. There is no business deal between Plaintiff and the City of Scranton. See Piper, 396 F.3d at 233, n.8; see also Hawthorne v. Mac Adjustment, 140 F.3d 1367, 1371 (11th Cir. 1998) (noting that by its ordinary meaning "transactions" refer to consensual or contractual arrangements), citing Webster's New Collegiate Dictionary 1230 (1979) (defining "transaction" as "a business deal"). The refuse ordinance does not require submission of an application by persons desiring refuse services, nor are there any allegations or evidence that Plaintiff's title agent or anyone else activated a refuse account with the City of Scranton upon purchase of the property. Id. (noting "testimony of Bethlehem's customer service

10

supervisor, who said that, when a sale occurs, the title company usually takes care of having the account transferred to the purchasing party" and comparing "Bethlehem, PA. Ordinance art. §§ 911.02(a) and 911.06(a) (providing for submission of an application by persons desiring water services and approval thereof by the City)."). Here, an owner of an occupied property in the City of Scranton automatically incurs the refuse fee whether or not the resident decides to place waste at the curb and utilize the service. Much like the anomalous Pennsylvania property owner briefly considered in Piper who incurs a water/sewer bill despite not connecting his property to the municipal water system, a resident of Scranton does not voluntarily avail himself/herself of the City of Scranton waste disposal services. See id. Lastly, the fee is not based on the amount of waste an owner or resident chooses to dispose unlike the metered water service considered in Piper. Id. Because the refuse service was not requested by Plaintiff and because the amount of Plaintiff's fee was not contingent upon the amount of waste she disposed, the refuse fee lacks the "consensual nature of the transaction." See Piper, 396 F.3d at 233, n.8. The refuse fee is a non-negotiable charge mandatorily levied upon property by ordinance for a service provided by the City of Scranton whether one avails themselves of the service or not. There is nothing consensual about the arrangement. There is no pro tanto exchange. Accordingly, the refuse fee does not meet the definition of "debt" under the FDCPA and Plaintiff has not set forth a viable cause of action under that statute.

Since Plaintiff has not set forth a cause of action under the FDCPA, Defendant moves to dismiss the remaining charges claiming they are premised upon a violation of the FDCPA. (Doc. 7, pp. 9-13) and (Doc. 9, 12-15). In her reply brief, Plaintiff simply incorporates her arguments set forth to establish a claim under the FDCPA and argues that "any violation of the FDCPA is a

11

violation of the FCEUA." (Doc. 8, pp. 11-12). Plaintiff also does not dispute that her claim under the UTPCPL is dependent on her claim under the FCEUA. (Doc. 8, p. 12, n.4). A review of the complaint reveals that "COUNT TWO - VIOLATIONS OF FCEUA AND CPL" primarily alleges violations of sections of the FDCPA. (Doc. 1, ¶¶ 40, 44, 45). However, the specific factual allegations are incorporated into the count and there are allegations that the refuse fee is a "debt" as defined by 73 P.S. § 2270.3 and that Defendant violated the state statutes by using false and deceptive means to collect a debt. (Doc. 1, ¶¶ 40-43, 45(h)).

"[I]t's true that '[v]iolation of the FDCPA is a per se violation of the FCEU[A],' and that '[a] violation of the FCEUA is a per se violation of the UTPCPL.'" Yentin v. Michaels, Louis & Associates, Inc., 2011 U.S. Dist. LEXIS 104711, *54-55 (E.D. Pa. 2011) (citations omitted). However, violations of the FCEUA and UTPCPL can stand independently. Id. This case could be particularly apt for the state claims standing independently since the FDCPA claim here is being dismissed solely because the debt in question does not meet the FDCPA's definition of "debt," but the FCEUA's definition of "debt" specifically "includes any amount owed as tax to any political subdivision of this Commonwealth." 73 P.S. § 2270.3. However, a determination as to whether Plaintiff has set forth independent claims under said Pennsylvania statutes is more appropriate for a Pennsylvania jurist.

This Court has federal question jurisdiction over the FDCPA claim based 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367. (Doc. 1, ¶ 2). Because the FDCPA claim will be dismissed, this Court will no longer have supplemental jurisdiction over the remaining claims so the matter will be transferred to the Pennsylvania Court of Common Pleas of Lackawanna County.

## IV.    Conclusion

The City of Scranton's mandatory refuse fee imposed by ordinance does not meet the definition of the term "debt" as defined in the FDCPA.  Accordingly, Plaintiff has not set forth a cause of action under the FDCPA and Defendant's motion to dismiss regarding Plaintiff's FDCPA claim will be granted.  The matter will be sent to the Pennsylvania Court of Common Pleas of Lackawanna County for further disposition.

A separate Order will issue.

**United States District Judge**

**Date: August 1, 2013**